1   **THE FOX LAW CORPORATION, INC.**
    Steven R. Fox, SBN 138808
2   17835 Ventura Blvd., Suite 306
    Encino, CA 91316
3   (818 )774-3545; FAX (818) 774-3707
    srfox@foxlaw.com
4

5   Attorneys for Debtor-in-Possession

6

7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  LOS ANGELES DIVISION

11  | In re | ) | CASE NO.: 2:19-bk-10073-WB |
12  | | ) | CHAPTER 11 |
    | Stanley Swains, Inc., | ) | |
13  | | ) | **FIRST DAY DECLARATION OF KARL WIEST IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS** |
14  | | ) | |
15  |        Debtor. | ) | |
16  | | ) | Date   : To be set |
    | | ) | Time   : |
17  | | ) | Place  : |
    | | ) | Petition filed January 4, 2019 |
18  | _____ | ) | |

19

20  I, Karl Wiest, declare as follows:

21  1.      I am an individual.  My business address is 445 West Colorado Street,

22          Glendale, CA 91204.  My statements in this Declaration are based on my

23          personal knowledge.  If called to testify, I could and would testify competently

24          concerning the contents of this Declaration.

25  2.      I am the president of the Debtor, Stanley Swain's, Inc. ("Debtor" or "Swain's")

26          and with my wife, the sole shareholder of the Debtor.

27

28

## I.

## Authentication and Personal Knowledge.

3.    I preform many roles for the Debtor.  I oversee operations.  I help negotiate contracts for product.  I oversee retail sales.  I work with our vendors.  I monitor sales.  For administration, I oversee the staff, and I both work on and oversee the creation and the preservation of the Debtor's financial records. I also work on marketing.  I oversee the employees.

4.    I have personal knowledge of the Debtor's business having worked at the business for many years.

5.    Along with the company's bookkeeper, I am one of the custodians of the Debtor's books, records and documents.  The Debtor maintains records of its transactions in the regular course of business, and it is the Debtor's practice and procedure to maintain records and to record transactions, acts, and events at or about the time the transaction occurs.  The Debtor relies on these records in connection with its business dealings.  I oversee the safekeeping of business records including financial records.

6.    The Debtor has business records primarily as computer files.  We use both a server at the office and also on the cloud.  If a business record is maintained on a computer, there are safety features which help to keep business records secure.  For example, access to many records is limited.  Financial records as one example can only be accessed if one has the necessary password.  Only management level personnel have a necessary password.  Other employees do not.  The computer is linked to a server.  The server backs up the data stored on the computer. The server computer and attachments are maintained in a secured location.

7.    I have personal knowledge of the procedures for creating, receiving, maintaining, storing and retrieving documents and records.  The Debtor's business records are received, maintained, stored and retrieved in the ordinary

1    course of the company's course of business.  It is the ordinary course of the

2    business to receive, maintain, store and retrieve records including any business

3    records attached as exhibits discussed below.  People with knowledge of the

4    records and any exhibits contained below  recorded  or made these exhibits

5    discussed below.  The records were recorded at or near the time of their

6    receipt or creation in the ordinary course of business.  The exhibits discussed

7    below are what they purport to be.

8                                        II.

9                       Background, the Problems and How

10                       the Debtor Intends to Reorganize.

11    A.           General Background on Karl Wiest.

12    8.    I have been in the art supply industry since the age of 18 when, in 1981, I

13          began working for my father Richard at an art supply distributor he

14          managed, Pacific Artist Materials. I worked in the warehouse, packing

15          orders for shipping, receiving and processing orders to be put into inventory

16          and eventually learning some of the office work as well. I continued to work

17          in the warehouse until the spring of 1984.

18    9.    At that time Pacific Artist Materials employed me in a new position - as an

19          outside sales position whose territory included much of Los Angeles and

20          points north.  After a number of years, I was Pacific's top grossing sales

21          representative.  Swain's was one of my original accounts.

22    10.   In the mid- 1990s, I was concerned with the direction of my then employer

23          and also about new technology competitors were employing.  These

24          technologies would under-cut my ability to sell products.

25    11.   I began to look for a new job position.  While interviewing for sales

26          positions, Swain's then owner, asked me to consider a position with Swain's.

27          He also offered me a chance to have ownership in Swains.  I accepted the

28          position with Swain's in 1995 as corporate Vice President.  My primary roles

1   were purchasing inventory, working on the sales floor, managing other

2   employees and working on special projects. Over time, I also worked in

3   other areas, e.g. advertising, setting prices for products and negotiating

4   with the landlords.

5   12.   I worked with the architect and contractors when Swain's expanded its

6   square footage in year 2001 on its floor plan design.  When Swain's again

7   expanded its space in year 2003, I had similar responsibilities.

8   13.   I also worked to convert Swain's inventory from hand to computer

9   maintained.

10        B.        <u>Purchasing Swains - a 4 Year Process</u>.

11  14.   Sometime in 2006, Swain's prior owners, the Lambuths, approached me

12  about purchasing Swain's.  The process took several years.  Finally in 2010,

13  Richard Noble and I became Swain's owners.

14  15.   This transaction complications hurt Swain's and helped lead to its first

15  bankruptcy case.  First, the transaction took place when Swain's revenues

16  were falling at a precipitous rate.  Another complication was the prior

17  owner's desire to keep secret the fact of the sale from the employees.  So

18  the prior owner conceived of a plan to extend employment contracts to the

19  three managers, and internally called them retention agreements.

20  16.   Under these agreements, Swain's (and not the prior owner) would be liable

21  for bonuses to the employees.  Another complication was that the

22  agreement by which Mr. Noble and I purchased the business was given to

23  us on a take it or leave it basis.  We were not permitted any counters.

24  17.   To purchase the business, Mr. Noble and I needed financing.  We did not

25  have access to the Debtor's  financial reports or tax returns.  The prior

26  owner took the lead on obtaining financing and he submitted required

27  financial documents - which we did not see.  The loan requests were

28  rejected, that is, until we applied to the eventual lender, First Foundation

1  Bank.  Its loan was difficult.  It required certain financial benchmarks which,
2  in retrospect, were unreasonable, especially given the recession.

3  18.   The loan straddled Swain's with $2,000,000 of debt.  The former owner
4  took $1.25 million at the time the loan funded and they also took
5  $571,000 cash out of the business and charged Swain's (which Swain's
6  paid) for a non-compete clause, for consulting services and for health
7  insurance premiums.  By my reckoning, when all of the nickel and dime
8  provisions were counted up, the purchase price was not $2 million, it was
9  closer to $2,730,000.

10  C.       Operating Swain's Prior to the First Chapter 11 Case.

11  19.   In 2010, with tough conditions, Noble and I reduced our salaries.

12  20.   The loan required payments based on Swain's EBIDTA. However, Swain's
13  lacked the cash flow to make these payments.  Swain's cash flow could not
14  handle its business needs and the EBIDTA payments.

15  21.   In 2010, we attempted to obtain lower lease payments from the landlords,
16  to help with cash flow and to pay bills.  The landlords declined to help.

17  22.   Swain's could not afford the continuing payments owed to the prior owner.
18  He was not willing to wait.

19  23.   To help Swain's, I sold my condo to pay off personal debt and to pay down
20  Swain's loan.  In exchange for the pay down, the lender eliminated the
21  EBIDTA payments.

22  24.   In 2012, I sought new financing to take out the then current loan and the
23  prior owner's claim.  Swain's could not obtain a new loan.

24  25.   Swain's filed its first chapter 11 petition.

25  D.       The First Chapter 11 Case and Its Plan.

26  26.   After much fighting, Swain's confirmed a plan, a hard fought plan.
27  However, as it turned out, Swain's ultimate problems, including its debt
28  load and expenses, were not solved.

27.  These problems, along with the lack of a point of sale software program, remained.  So Swain's had both a confirmed plan and unsolved problems.  The Plan did not address these problems.  Swain's could not afford the Plan.

28.  Despite all this, Swain's made many payments.  The former owner and the lender were owed $1,087,000 in the aggregate, when the Plan was confirmed.  Swain's paid their obligations down to about $350,000 (aggregate figure).  Then my wife and I refinanced our residence in early 2018.  From the refinance, we paid $350,000 to the prior owner and the lender to pay them off in full and ahead of schedule.

29.  As for unsecured creditors, they were paid approximately $10,500 of what they were promised under the Plan.

30.  A tremendous amount of debt was paid off, much more than ever would have been paid in a liquidation but still Swain's had its operating and business problems which had not been addressed.

31.  Our counsel from the first chapter 11 case, David Tilem was owed some $283,000 at plan confirmation.  Swain's paid his claim down to under $150,000.  David Tilem recorded his fee order and, as I understand it, he holds a security interest in certain of the Debtor's assets.

32.  In addition, while the landlords agreed to permit Swain's to sub-let part of its then leased premises, the landlords rejected the sub-tenant.  They would only permit a sub-tenant which sold arts and crafts, therefore it would be a competitor to Swains.  We never obtained a sub-tenant the landlords would approve.  This meant that a major expense item, lease payments for the space, would not be reduced.

E.     The Problems Were Not Solved and Swain's Suffered.

33.  Following plan confirmation, sales did increase slightly for the first time in some seven years.  Swain's had gone through a recession, a chapter 11

1  case and was becoming antiquated, having difficulties keeping up with the
2  competition.  In 2015, we made major changes to the store to try to update
3  the store and to better compete with our competitors.  The customers liked
4  the changes and sales jumped over 7% for the year.

5  34.  2016 looked like another good year though money was tight given the plan
6  payments.  Things came to a halt, sales ground to a halt, around
7  September of 2016.  We ran out of key products because Swain's ran into
8  balloon payments which the Plan required Swain's to make.  (More on this
9  below.)  Year 2016 was not a bad year when looked at as a whole but the
10  last 4 months' sales were poor.

11  35.  During this time, sales in the art department, including artist paints and
12  painting surfaces were healthy and the Graffiti Art Department, which sold
13  products for aerosol art, began to take off.

14  36.  As noted above, the landlords would not permit Swain's to sub-let to a
15  dance studio.  This cost Swain's $8,000 to $10,000 per month.

16  37.  The plan also called for Swain's to install a POS (point of service) sales and
17  purchasing system along with an e-commerce platform to sell product
18  online. A POS system would have allowed Swain's to more carefully track its
19  inventory and to purchase inventory more precisely, thus saving money.  To
20  save money, we needed money.  Swain's did not have the money.

21  38.  The confirmed plan called for a "balloon payment period" beginning in
22  September of 2016.  This crippled our cash flow. I tried to rework the loans
23  with the secured creditors, and eventually did in the spring of 2017, but the
24  process dragged on for six months and the massive payments made during
25  this period created permanent damage to cash flow.  With damaged cash
26  flow came an inability to properly stock the store with inventory and to
27  timely pay our vendors.  At the same time, anticipated sales from the
28  website did not materialize.

39.   In mid July, 2017, we secured a hard money loan which permitted Swain's to purchase enough inventory for the back to school period (August and September, 2017) and to purchase inventory for toy and gift sales. Swain's paid the required payments through July, 2018. Had Swain's paid off the loan early, then it would have incurred penalties.

40.   In March, 2018, when I paid off the prior owner and the lender from the refinance of our residence, I had hoped to use the monies in part to purchase new inventory. Negotiations with both the prior owner and the lender were difficult enough that my wife and I decided to pay them off and to try to find money from elsewhere to purchase inventory. We figured that Swain's cash flow would improve and we could obtain financing elsewhere to fully stock the store with inventory. It turned out we were wrong.

41.   Swain's sought financing from conventional lenders. No luck. I tried to interest industry people about infusing money and taking an equity stake. No luck. I spoke with customers who might wish to make an investment. No luck. One customer declined to invest monies but he gave Swain's many hours of his professional time designing new logos, branding, making business cards and exterior store signage for the new location. Another customer donated over 30 hours of labor and materials to install exterior signs. That saved Swain's a lot of money.

42.   Ultimately Swain's took out a hard money loan but for only $50,000. To fully stock a store like Swain's, we needed a lot more money.

F.        Moving Toward the Second Chapter 11; Moving Forward.

43.   Swain's could not afford the lease payments at its prior location. The landlords were not willing to help. Swain's conducted a moving sale at the prior location in summer, 2018 and then moved to its present location also in Glendale. Sales plummeted during this time because (1) Swain's could not obtain inventory, (2) most of the staff focused on closing up the old

1    location and opening up the new store and (3) the inventory on hand

2    consisted largely of slow moving product.

3    44.    Moving was very difficult but at the same time it was a meaningful

4    experience.  People came out of the woodwork to help Swain's.  Swain's

5    meant something to them.  Commercial trucks were donated without cost to

6    cover two moving days.  Manual labor was contributed and, as noted

7    above, and numerous hours were contributed to make new logos,

8    branding, business cards and exterior store signage.

9    45.    Though Swain's moved to the new leasehold in late August and into

10    September, 2018, Swain's was operating in the new location, and

11    operating expenses had been severely reduced, the basic problems

12    remained.  Cash levels were near zero, inventory levels were low and

13    Swain's could not obtain inventory on credit.  Sales which had been in the

14    millions of dollars annually ass recently as 2017, tumbled to close to zero in

15    fall, 2018.  The pattern of gross revenues (cash basis) in 2018 was difficult.

16    From February through August, gross revenues trended in or near

17    $100,000 monthly (a far cry from previous years' gross revenues).

18    September dropped to $17,371.  Essentially there were almost no sales in

19    September while the new store was being set up and organized.

20    46.    However, at the same time during the fall, 2018, Swain's reduced its staff

21    from perhaps 20  employees to 7 employees and continued to reduce

22    expenses.

23    47.    With a lot of patient efforts, Swain's obtained some inventory on credit.

24    This inventory included artist brushes, oil paints and pens and markers.

25    Swain's advertised the new product to its regular customers who returned

26    and purchased products.

27    48.    Since September, 2018, and as reflected in the cash based P&L statement

28    for year 2018, monthly gross revenues have slowly but steadily increased:

| 1 | September | $17,371 |
| 2 | October | $27,444 |
| 3 | November | $26,729 |
| 4 | December | $35,839 |

5    G.        Swain's Current Financial Position.

6    49.    Liabilities.  Its secured creditors appear to be the following:

7    •        David Tilem (judgment lien recorded October 7, 2016.  The
8            statement amount on the judgement is $186,525.  The Debtor
9            believes that the amount owed is closer to $89,000 (per the
10           balance sheet) but understand that Mr. Tilem believes the claim
11           amount to be approximately $125,000.

12   •        On Deck (UCC 1 financing statement filed July 27, 2017) (The
13           UCC 1 filed by CSC as a representative for On Deck.)  Swain's
14           has two obligations with On Deck, a year 2017 loan for which
15           the Debtor believes $55,889 is owed and a year 2018 line of
16           credit as to which the Debtor believes $41,487 is owed.

17   50.    For purposes of the First Day Motions, Swain's assumes David Tilem and
18          On Deck hold proper security interests, that they are valid and are not
19          defective and that their interests cannot be avoided or undone.  The
20          opposite may be the case though.

21   51.    Based on the Debtor's December 31st 2018, balance sheet (accrual) and
22          just considering general unsecured claims, the Debtor's unsecured debt
23          amounts to approximately $945, 573 spread out over 200 unsecured
24          claims (includes creditors from the prior case, collections companies and
25          new creditors).

26   52.    Revenues.  The Debtor's gross revenues during fall, 2018, are discussed
27          above.  The Debtor has prepared a projection of its anticipated future
28          revenues, costs of goods sold, expenses, net income, cash flow and

1  inventory values for the first 10 weeks of the case.  I worked on the

2  projection and it represents our best thinking based on prior months plus

3  how we believe the business will change in the coming months. (Exhibit

4  "A") I believe that the business has reached bottom.  Suppliers have

5  provided product on limited credit terms.  With Swain's mark up, Swain's

6  can pay for product from sales and have sufficient monies to pay overhead

7  expenses, to purchase new inventory and to grow the business.  With the

8  Court' approval, I am prepared to lend $100,000 to the Debtor for the

9  purpose of purchasing inventory.  During this proposed period of time, the

10  10 week period, I expect that cash flow will improve slightly, monies on

11  hand will increase slightly and inventory value will not decline.

12  53.  Assets.  Swain's assets are the following:

13  •  Inventory                                        $50,000 (estimate

14                                                       - a physical

15                                                       inventory is on-

16                                                       going and will be

17                                                       completed post-

18                                                       petition)

19  •  Misc. Shelving, desks, computers, copier,

20     equipment, phone system, hand tools, misc.

21     tools, forklift, office furniture (may include

22     some leased property:                            value unknown

23  •  Monies on hand:                                  $100,000 plus

24                                                       any monies on

25                                                       hand

26  54.  As noted elsewhere in my declaration, the value of inventory on hand has

27  dropped dramatically from prior years.  Its value has increased since the

28  low point in September, 2018.  No new inventory product has been

1    received in the 21 days prior to the filing of this second chapter 11 case.

2

3    55.    <u>Expenses</u>. The Debtor has brought its expenses down dramatically. I did

4    not believe that its expenses to drop this much. The drop happened for a

5    number of reasons. One reason is there was no choice. Another is the

6    decision to change to nature of the store and to change the mix of the

7    customer base. This is discussed in more detail below.

8    56.    I have provided money to Swain's in recent months so that it can pay its

9    essential bills. Rent, though lower than it used to be, is close to $17,000

10    each month and it has been a stretch to pay rent and payroll. I have some

11    reason to be encouraged though as the monthly gross revenues figures

12    have slowly but steadily increased since September, 2018.

13    57.    <u>Financial Status</u>. The Debtor's financial position can be seen in the

14    financial reports attached to my Day Declaration. Either I prepared the

15    reports or I directed their preparation. I have had the opportunity to

16    consider the report and to make corrections if necessary. Those reports are

17    as follows:

18    •    A projection of gross revenues, COGS, expenses and cash flow

19    (cash basis) for the first ten (10) weeks of the case. (**Exhibit**

20    **"A"**) Going forward, the Debtor does not anticipate incurring

21    significant losses. I believe that the projection is reliable in that

22    it is based on present conditions with changes which I believe

23    are reasonably likely to occur as inventory levels rise.

24    •    P&L Statement (cash) for 2018. (**Exhibit "B"**)

25    •    P&L Statement (accrued) for 2018 (**Exhibit "C"**)

26    •    Balance sheets (cash and accrual as of December 31, 2018.

27    (**Exhibit "D"**) The balance sheet is unaudited and I am unsure

28    if it is reliable.

1    •    A P&L statement for year 2017.  (Exhibit "E")

2

3    •    Copies of recorded UCC 1 Financing Statements and David

4    Tilem's judgment lien.  (Collectively **Exhibit "F"**)

5    58.    <u>The Business Model and Reorganization</u>.  Swain's will not attempt to

6    recreate what it was - a business which sold art supplies to the general

7    public, to hobbyists and to serious artists and which also sold toys and

8    cards.  Instead Swain's will focus on art supplies for serious artists and for

9    serious artwork.  The inventory now has that focus.  Swain's will focus not

10    on the casual consumer but on the smaller community of serious artists who

11    require more high end inventory.  While gross revenues will not return to

12    prior levels, Swain's should have more sustainable gross revenue figures

13    then it has had in the recent past and it will have a modest net income.

14    59.    Swain's is working on creating community events at the store, poetry

15    readings, art events, etc.,.  We are beginning to work with Glendale city

16    officials who encourage arts.  We talk with our suppliers and distributors,

17    showing them the store, sharing financial information with them, and letting

18    them know what Swain's future will be.

19    60.    <u>Personal Life</u>.  During these past years since the first plan was confirmed,

20    my personal life has been difficult.  In the past few months, I have made a

21    point to attend my son's Boy Scout events, to attend church regularly and to

22    return to the serious physical activities like mountain biking, things that I

23    had stopped doing as matters got tougher at the business.  These are life

24    focusing activities help make me better in the business.  Going to back to

25    these basics has been important for me to try to get my focus back and to

26    get my ability to work on the reorganization into high gear.

27

28

III.

## Post-Petition Events and Why Swain's Can

## Make it Through A Second Chapter 11 Case.

61.  Swain's has filed various first day motions including a motion to permit it to borrow $100,000 from me.  After witnessing Swain's descent and its first steps upward, a family member offered to make available to me $100,000 for the primarily purpose of purchasing new inventory for re-sale.

62.  Swain's will also provide compliance documents to the U.S. Trustee including insurances such as workers compensation.

63.  Swain's intends to file a plan of reorganization and to remain in business. It should have one or more impaired classes voting to support plan confirmation.  In addition, at the time of plan confirmation, I believe I will be in a position to contribute new value to the Debtor based on statements from family to me.

64.  The second case does not concern the prior owners' claims for monies nor does it concern the prior lender's claims for monies based on an SBA loan. Swain's has paid over $1 million in debt through its Plan.

65.  Instead, the primary debts here are those held by David Tilem, the new debts owed to On Deck from 2017 and 2018 and by the suppliers who continued to do business with Swain's during the prior chapter 11 case and afterward.  The suppliers' debts are new debts.  There are unsecured claims remaining from the first chapter 11 case which have not been paid but they do not make up a numerical majority of the claims held against Swain's.

66.  Also I am ready to lend the $100,000 to the Debtor on generous terms as monies to kick start the business.

# IV.

## Request for Authority to Use Cash Collateral.

67. Swain's seeks authority to use cash collateral. It seeks this authority on an interim basis under the budget and on a final basis in the ordinary course of business.

68. Swain's requires the use of cash collateral to operate its business, to pay employees, to pay rent and other expenses. Without the use of cash collateral, the Debtor will be unable to remain in business and its reputation in the industry will be severely harmed. Authorizing the relief Swain's requests below will benefit any entity asserting interests in monies as the use of cash collateral protects their security. If their security interests extend to the Debtor's monies, then Swain's lacks unencumbered sources of monies or other assets to pay ordinary course of business obligations.

69. Swain's has to respond to the purchasing public. Swain's does not control what inventory customers purchase; Swain's makes its best estimates.

70. <u>Variances</u>. We have done our best to make accurate projections concerning Swain's income and expenses. However, budgeting is not an exact science, especially here where customers may purchasing some inventory faster than anticipated, other inventory slower than anticipated. There may be considerable variance week to week and month to month. Given these uncertainties, Swain's requests that it be permitted to vary from the proposed budget by as much as 20% in any one category where the projected spending is under $1,000 and vary from the proposed budget by as much as 15% as to any category where the projected spending is $1,000 or more. If the Debtor determines it needs to vary from any one budgeted item by more than the 15% or 20% variances, the Debtor proposes that it provide written notice by email or telecopier of the variance to the secured creditors (here David Tilem and On-Deck). They would have

48 business hours to object to the proposed variance. If it did not timely object, then the variance would  be deemed approved. If a secure creditor objects to the proposed variance, then Swain's could seek to set a hearing to obtain Court approval of the variance.

71.  A 20% variance for smaller budgeted items under $1,000 is reasonable given (1) the cost in attorneys' fees to obtain a variance and (2) the small amount of money involved in a short interim period. A 15% variance as to larger items is also appropriate. These variances will not likely be rent, payroll or utility type expenses; they will more likely be higher than expected costs resulting from higher than anticipated product purchases.

72.  <u>Rolling Unspent Budgeted Monies Forward</u>. The budget is a weekly budget. It is likely Swain's will underspend in certain categories in some weeks. Swain's requests that the Court authorize the Debtor to carry over from previous weeks any unused monies to be used in the same categories in future weeks. Swain's also requests that the monies carried forward not count toward the variances. The rollover is important because Swain's is projecting sales and revenues on a weekly basis but some sales and some revenue may come sooner or later than projected. If there is no rollover, then Swain's may have insufficient monies in various categories.

73.  <u>Applying Excess Gross Revenues to Costs of Goods Sold</u>. In some periods Swain's gross revenues may exceed projected gross revenues. This would likely mean that Swain's had higher sales than projected. It will need to purchase replacement inventory. Swain's requests that in the event that its gross revenues exceed the projected figures that it be permitted to apply up to 75% of such excess gross revenues to costs of goods sold and also to advertising and marketing. COGS refers to the costs to purchase inventory, shipping, and to labor costs which are tied directly to purchasing inventory.

74.   <u>The Secured Entities' Interests Are Adequately Secured</u>.  I understand that for Swain's to use cash collateral, secured creditors must be given what is called adequate protection.  I believe that such protection is being given for the following reasons:

a.      The value of the Debtor's assets.

b.      Swain's will continue to operate the business and maintain and service the assets.

c.      Operating the business creates additional revenues.

d.      All assets are adequately insured.

e.      Providing replacements lien to secured creditors to the extent its prepetition lien attached to Swain's property prepetition and with the same validity, priority, and description of collateral.  To be clear, if there is a defect in a security interest prepetition, that same defect would apply post-petition.  Swain's is not taking a position here that any asserted security interest is properly perfected and valid; only that such lien has the same priority and validity as it did prepetition.

f.      The Court may order Swain's at the interim hearing or at a final hearing to make adequate protection payments.  Swain's does not propose to make adequate protection payments at least for a few months so that Swain's can start to get its finances on a firmer basis.

75.   <u>Insiders Compensation</u>.  The budget provides for compensation for an insiders but Swain's will not pay insider salaries pending either an order of the Court or completion of the U.S. Trustee insider compensation request process.  I understand that creditors have a period of time, once they are served with the insider compensation form, to object to compensation insiders are seeking.  The two insiders are my wife Lori and me.  Neither

1    Lori nor I have not taken a salary for some time because Swain's has not

2    had money to pay me.  Instead, we have provided money to the Debtor so

3    that it can pay bills.

4    ### V.

5    ### Payroll Motion

6    76.    Swain's pays payroll to 9 employees. Prior to January 1, 2018, payroll was

7    paid every two weeks. So on December 27th, the Debtor was due to pay

8    payroll to its employees for the period December 10th to December 23rd.

9    Beginning January 1, 2019, payroll will be paid twice a month for the ½

10   months ending on the 15th and 30th or 31st of each month. The January 15th

11   payroll (for the period January 1st to January 15th) is due to be paid on

12   January 17th.  To make the change from a payroll every two weeks to a

13   payroll twice a month, Swain's added an extra payroll for the period

14   December 24th to December 31st which was paid prepetition.

15   77.    Future payrolls will be twice monthly. Other than Lori and me, there are no

16   insiders.  One employee, Richard Noble, used to be an officer and a

17   shareholder.  However in or about May, 2018, he surrendered his shares of

18   stock and also resigned as a corporate officer. He has remained as a part

19   time employee. These changes occurred because of health issues he has.

20   78.    Swain's seeks authority to pay the payroll due for the period January 1,

21   through January 15, 2019 as this payroll is both a prepetition and a post-

22   petition payroll.  The amounts owed for this payroll are for payroll owed

23   within 180 days of the case's commencement and also within the maximum

24   priority payroll amounts and priority contributions amounts allowed by the

25   Bankruptcy Code.

26   79.    Here are estimated figures for the January 15th payroll:

27   • Payroll to Insiders:          $5,724.45 (gross) (if paid)

28   • Payroll to Non-insiders:    $3,331.13 (gross) and $2,976.71 (net)

80. Swain's should have funds on hand this week to pay the January 15th payroll. If it does not, then I am likely to infuse the monies to cover the payroll. A spreadsheet showing the December payrolls and the anticipated January 15th payroll is attached here as **Exhibit "G."** I prepared the reports using the Debtor's financial records.

81. The employees' wages were earned prepetition but are within the amounts which I understand that the Bankruptcy Code says are priority.

82. Secured Creditor. There are secured creditors that assert an interest in various assets of the Debtor including accounts, goods, and inventory. Copies of their financing statements are attached to my Declaration. (Exhibit "F")

83. I understand that the Court's own rules require that certain facts must be demonstrated:

• The employees are still employed.

The public interest is that employees remain employed and be paid. Swain's does not propose to pay employees who would be leaving its employ.

• The necessity for payment.

The employees are not highly compensated. They do support families. Without payroll, they would be forced seek other jobs. That would destabilize the reorganization. Swain's is not seeking to further reduce its staff but likely will increase its staff as and when the store becomes busier. Payment benefits creditors as the business will continue to operate.

• The benefit of the procedures.

The Debtor needs its employees to assist in the reorganization. They provide crucial functions to the Debtor. They do the day-to-day work of the business such as ordering product, confirming shipments, dealing

1    with retailers, handling sales and customer questions and requests.

2    •           The prospect of reorganization.

3    Prospects are good.  My Declaration identifies the difficulties leading to this

4    bankruptcy filing and it describes steps the Debtor will take to reorganize.

5    This is the Debtor's second time in chapter 11.  However, the business is

6    very different this time around, the expenses have been remarkably reduced

7    (including dropping rent by more than 50%) and the nature of the debts are

8    quite different than in the first case.

9    •           Whether the employees are insiders.

10   My wife and I are the only insiders. Richard Noble was a minority

11   shareholder and officer.  He resigned in early 2018.  He relinquished his

12   stock and resigned his corporate position at that time due to health issues.

13   He remains as a long time but part time employee.

14   •           Whether the employees' claims are within the limits established

15   by 11 U.S.C. § 507.

16   The claims are within the priority wage limits of this statute.

17   •           The payment will not render the estate administratively

18   insolvent, not with the infusion of the $100,000.

19   84.   The Debtor has an asset of base of inventory and regular sales.  It expects

20         to have funds on hand to pay payroll for the period ending January 15th.

21   85.   It is important to minimize hardship that the employees will suffer if payroll

22         and related obligations are not paid when due or expected, and to

23         maintain morale and an essential workforce during this critical time.

24                              VI.

25                   Customer Practices and Warranties

26   86.   Customer Guarantees.  The Debtor offers a 60-day money back guarantee

27         on all of its products or credit for other products provided that the product is

28         in new condition.

87.  Also if a customer purchases a product which turns out to be defective, the Debtor works with the customer and the manufacturer to either repair the product or for the manufacturer to supply replacement product.

88.  The Debtor offers these guarantees for valid business purposes.  They are offered in the ordinary course of the Debtor's business at its discretion based on its business judgment.  They give customers a level of comfort and trust.  They create good will.  Swain's competitors offer similar guarantees.

89.  The Debtor generally experiences a return rate of under 5%. I have never calculated the return rate.  At present the Debtor has no requests for refunds from customers but the requests can be made at any time.

90.  The Debtor also sells gift cards.  In my experience most gift cards are not redeemed.  I anticipate, based on experience, that no more than $10,000 in gift card redemptions may occur in the next year.  The actual redemption amount is likely to be lower.

91.  Based on my experience in this business first as a sales person for many years for a distributor and then for most of this century working at Swain's, I am comfortable in stating that if Swain's could not honor its 60 day return policy, and its gift cards, the impact would be swift and harsh.  Swain's customer base largely consists of committed artists who rely on Swain's. They talk to each other and leave public comments o Facebook, Google, Yelp and elsewhere.

## VII.

## Motion to Borrow Funds.

92.  As discussed above, the Debtor is in a difficult position.  Its inventory stock is relatively low but it has a customer base willing to buy product.  Suppliers and distributors are willing to sell to the Debtor on C.O.D. terms though some have provided credit terms.  There are two primary suppliers and a

number of smaller suppliers.  It is from the two primary suppliers that Swain's can stock its shelves, not fully, but much more than presently.

93.   A family member has offered to lend to me $100,000 which I would in turn lend to the Debtor for the primary purpose of purchasing inventory for re-sale.  A copy of the proposed note is attached here as **Exhibit "H."**

94.   I applied to two lenders for monies to purchase inventory.  Both turned Swain's down.  Copies of their rejection notices are attached.  **Exhibit "I."**

95.   The projections (Exhibit "A") show the impact of a $100,000 infusion but only over the short term.  The projections show that inventory levels will rise leading to more sales and a higher gross revenues.  Over time (a much longer period than 10 weeks), the value of the $100,000 loan will pay dividends far beyond $100,000 . The $100,000 should lead to higher inventory levels, higher gross sales and a modest net income.

96.   It is my sense that the Debtor cannot otherwise grow from its diminished position.  For On Deck or David Tilem, the loan is their best shot at being paid.  The Debtor lacks the funds to pay them.

97.   My terms are straight forward:

- $100,000 loan
- An administrative claim
- interest to run at 5%
- No regular payments required though if there are funds on hand, the Debtor can make loan payments
- All monies, principal and interest, due at or before the effective date of any plan the Court may approve.
- If not paid at the time of the effective date, then the loan is in default.

98.   These terms are fair and reasonable, especially the low interest rate and the

lack of a requirement that payments be made to me on a regular basis.

## VIII.

### Utility Services

99.    Attached to my declaration as Exhibit "J," is a chart which shows the utility service used by Swain's in the past 12 months. The figures in the chart are taken from billing statements which the utilities have provided to Swain's. Though I did not prepare the chart, I have compared the information contained in the chart to the billing statements and, based on that comparison, the information in the chart is accurate.

100.    As the Debtor operates a retail store, it has utility service and it requires that utility service in order to remain in business. The Debtor does intend to reorganize.

101.    Prepetition the Debtor moved from its old location to its present location. The local utility, Glendale Water & Power, took the unpaid utility bill from the former location and is charging it against the new location. This utility is threatening to shut off Swain's utilities service. That would shut down the business.


Executed this January 3, 2019, at Encino, California.

I declare under the laws of the United States of America and under penalty of perjury that the foregoing is true and correct.

Karl Wiest

# EXHIBIT "A"

Stanley Swains, Inc.
Projection of Cash Receipts and Disbursements
For the 10-week period ending 03/15/2019

| For the week ending: | 1/11/19 | 1/18/19 | 1/25/19 | 2/1/19 | 2/8/19 | 2/15/19 | 2/22/19 | 3/1/19 |
|---|---|---|---|---|---|---|---|---|
| Revenue | 8,000 | 8,000 | 12,000 | 12,000 | 16,000 | 16,000 | 20,000 | 20,000 |
| Sales Tax Revenue | 760 | 760 | 1,140 | 1,140 | 1,520 | 1,520 | 1,900 | 1,900 |
| COGS | | | | | 4,000 | 4,000 | 5,500 | 5,500 |
| Net Cash Receipts | 8,760 | 8,760 | 13,140 | 13,140 | 13,520 | 13,520 | 16,400 | 16,400 |
| Expenses | | | | | | | | |
| Advertising/Marketing | | | 500 | | | | 500 | |
| Bookkeeping | 225 | 1,700 | 225 | 225 | 225 | 1,700 | 225 | 225 |
| Credit Card / Bank Fees | | | | | 1,226 | | | |
| Insurance -see below | | | | 3,200 | | | - | 3,200 |
| Payroll -Officers | | 7,900 | | 7,900 | | 7,900 | | 7,900 |
| Payroll-admin, PR Tax+fees | | 3,300 | | 2,300 | | 3,300 | | 2,300 |
| Office & Admin Expenses | | 750 | | 750 | | 750 | | 750 |
| Rent+Parking Lot Expense | | | | | 16,875 | | | |
| Repairs & Maintenance | | 450 | | 450 | | 450 | | 450 |
| Sales tax | 4,323 | | | | | 3,040 | | 5,320 |
| Telephone and Utilities | | 1,920 | | | 1,920 | | | |
| US Trustee Fees | | | | | | 1,625 | | - |
| Total Expense | 4,548 | 16,020 | 725 | 14,825 | 20,246 | 18,765 | 725 | 20,145 |
| Net Ordinary Income | 4,212 | (7,260) | 12,415 | (1,685) | (6,726) | (5,245) | 15,675 | (3,745) |
| Beginning Cash as of 12/17/18 | 1,500 | | | | | | | |
| Cash/Credit -New Money | 100,000 | | | | | | | |
| Inventory Purchases | (50,000) | (20,000) | | | | | | |
| Leasehold improvements | - | - | | | | | | |
| Projected Ending Cash | 55,712 | 28,452 | 40,867 | 39,182 | 32,455 | 27,210 | 42,885 | 39,140 |
| Projected Inventory-Cost Basis | 86,800 | 103,600 | 98,800 | 94,000 | 87,600 | 81,200 | 73,200 | 65,200 |

| 3/8/19 | 3/15/19 | Totals |
|---|---|---|
| 25,000 | 25,000 | 162,000 |
| 2,375 | 2,375 | 15,390 |
| 7,500 | 7,500 | 34,000 |
| 19,875 | 19,875 | 143,390 |
| | | - |
| | 500 | 1,500 |
| 225 | 225 | 5,200 |
| | | 1,226 |
| | | 6,400 |
| | 7,900 | 39,500 |
| | 3,300 | 14,500 |
| | 750 | 3,750 |
| 16,875 | | 33,750 |
| | | 2,250 |
| | | 8,360 |
| | 450 | 8,163 |
| | | 1,625 |
| 17,100 | 13,125 | 126,225 |
| 2,775 | 6,750 | 17,165 |
| | | 1,500 |
| | | 100,000 |
| | | (70,000) |
| | | - |
| 41,915 | 48,665 | 48,665 |
| 55,200 | 45,200 | 65,200 |

**Footnotes**

| | |
|---|---|
| Revenue | Projection reflects slow but steady increase in revenue |
| a. | Upon ordering supplies, it can take from a couple of days up to 10 days for the orders to be received |
| b. | Marketing/adverting efforts to start once products arrive, which will impact weekly increase . |
| Sales Tax Revenue | Calculated as 9.5% of weekly sales. |
| COGS -Labor | COGS for labor only as material outlay is reflected in Inventory Purchases. |
| Advertising/Marketing | Based on the cost of the last few months |
| Bookkeeping | Based upon current rates of bookkeeper hired to bring accounts current and hours required to maintain books and records. |
| Credit Card / Bank Fees | Calculated amount based on 80% of sales volume @ 2.8% fee rate |
| Insurance -see below | Please see table 1 below |
| Payroll -Officers | Officers comp includes salaries for Karl Weist, Lauri Weist, and Rich Noble. |
| Payroll-Admin, PR Tax and fees | Sales, Mgmt, Clerical and administrative personal along with Payroll taxes and fees. |
| Office & Admin Expenses | Includes amounts estimated for office expense, computer and internet, security, store expense, and taxes and licenses. |
| Rent | 16,875/month. |
| Repairs & Maintenance | Based on current spendings |
| Sales Tax | Based upon 9.5% of previous month's sales. |
| Telephone and Utilities | Please see table 2 below...Also must pay $4,323.32 on 01/10/2019 to avoid service cancelation |
| US Trustee Fees | Based upon US Trustee Schedule of Fees.  Next UST fee will be due at the end of January. |
| Cash/Credit -New Money | New money contributed via owner Karl Weist |
| Inventory Purchases | Amounts required to restock depleted inventory, allowing revenue numbers to resume previous levels. |
| Projected Inventory-Cost Basis | The existing inventory of approximately $40K increased by inventory purchases and decreased by inventory sold (estimated by multiplying Sales Revenue by 40% margin). |

**Table 1**

| Insurance | Per month | |
| --- | --- | --- |
| Workers Comp | - | ***overpaid...nothing due until April |
| Liability/Umbrella | 625 | |
| Health | 2,400 | |
| LT disability | 175 | |
| | 3,200 | |

**Table 2**

| Utilities | Per month |
| --- | --- |
| Glendale Water & Power | 1,000 |
| City Glendale Waste Mgmt | 300 |
| So CA Gas | 20 |
| Spectrum Phone+Internet | 600 |
| | 1,920 |

0028

# EXHIBIT "B"

**Cash Basis**

**Stanley Swain's, Inc.**
**Profit and Loss**
**January - December 2018**

| | Jan 2018 | Feb 2018 | Mar 2018 | Apr 2018 | May 2018 | Jun 2018 | Jul 2018 | Aug 2018 |
|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | |
| Returns & Allowances | -1,457.50 | -1,523.75 | -1,293.08 | -1,228.03 | -1,135.94 | -824.83 | -227.29 | -1,076.84 |
| Sales | 396,153.97 | 188,954.40 | 171,383.50 | 133,809.43 | 130,731.28 | 100,056.80 | 93,655.89 | 94,175.98 |
| **Total Income** | $ 394,696.47 | $ 187,430.65 | $ 170,090.42 | $ 132,581.40 | $ 129,595.34 | $ 99,231.97 | $ 93,428.60 | $ 93,099.14 |
| **Cost of Goods Sold** | | | | | | | | |
| Merchandise for Store | 135,128.03 | 86,644.65 | 22,547.09 | 6,023.49 | 18,757.39 | 10,159.50 | 8,384.85 | -337,925.50 |
| Merchant Account Fees | 7,291.20 | 8,696.33 | 5,061.11 | 4,812.62 | 4,123.76 | 3,613.47 | 2,609.01 | 1,852.81 |
| **Total Cost of Goods Sold** | $ 142,419.23 | $ 95,340.98 | $ 27,608.20 | $ 10,836.11 | $ 22,881.15 | $ 13,772.97 | $ 10,993.86 | -$ 336,072.69 |
| **Gross Profit** | $ 252,277.24 | $ 92,089.67 | $ 142,482.22 | $ 121,745.29 | $ 106,714.19 | $ 85,459.00 | $ 82,434.74 | $ 429,171.83 |
| **Expenses** | | | | | | | | |
| Advertising/Promotion/Marketing | 21,956.34 | 2,347.93 | 2,452.00 | 1,052.00 | 552.00 | 752.00 | 1,500.00 | 697.50 |
| Bank Service Charges | 249.73 | 249.45 | 206.36 | 199.01 | 182.70 | 182.59 | 176.95 | 394.29 |
| Build-Out | | | | | | | | 3,110.88 |
| Building Lease Common | 2,634.16 | | 763.34 | 763.34 | | 1,317.08 | | |
| Building Lease Taxes | 1,526.68 | | 1,317.08 | 1,339.10 | | 763.34 | | |
| Building Lease/Rent | 78,888.96 | | 39,444.48 | 39,444.48 | | 14,444.48 | | |
| Computer and Internet Expenses | 14.55 | | | 593.75 | | 334.29 | | |
| Donation | 65.00 | | | | | | | |
| Dues and Subscriptions | 747.38 | 318.94 | 543.26 | 318.94 | 318.94 | 738.94 | 1,409.50 | 326.97 |
| Fees | | 27.00 | 25.00 | | 64.00 | 7.99 | 8,152.47 | 818.20 |
| Insurance Expense | 2,015.74 | | 3,070.41 | 3,080.37 | 313.21 | 1,696.79 | 1,696.79 | 1,696.79 |
| Interest Expense | 727.58 | 765.08 | 251,502.65 | 806.77 | 591.33 | 927.49 | 973.01 | 60,692.19 |
| Licenses and Fees | 627.00 | | | | | | | |
| Loan Fees | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 |
| Medical | 145.00 | 4,967.61 | 4,822.71 | 4,822.71 | 4,822.71 | 4,822.71 | 4,822.71 | 4,822.71 |
| Moving | | | | | | | | 1,853.10 |
| Office Supplies | 741.48 | 2,312.75 | 322.85 | 184.79 | 267.45 | 561.07 | 923.30 | 101.04 |
| Other Taxes Paid | | | | | | 689.54 | 27.05 | |
| Payroll Salaries | 36,878.15 | 36,085.93 | 34,374.29 | 33,695.44 | 49,252.28 | 33,294.64 | 33,759.57 | 34,346.49 |
| Payroll Taxes | 11,245.65 | 15,666.61 | 14,624.02 | 14,451.86 | 21,075.83 | 14,223.32 | 14,253.76 | 16,151.48 |
| Payroll Fees | 694.50 | 276.80 | 276.80 | 282.90 | 423.15 | 279.25 | 293.10 | 283.90 |

Cash Basis

## Stanley Swain's, Inc.
## Profit and Loss
### January - December 2018

| | Jan 2018 | Feb 2018 | Mar 2018 | Apr 2018 | May 2018 | Jun 2018 | Jul 2018 | Aug 2018 |
|---|---|---|---|---|---|---|---|---|
| Postage | 800.00 | | | | | | | 300.00 |
| Printing | 206.88 | | | | | | | |
| Professional Fees | | 600.00 | 875.00 | | | 300.00 | | |
| Rent Expense | 914.13 | | 731.25 | 3,420.00 | 267.50 | 1,403.50 | 1,627.50 | 68,712.50 |
| Rental Equipment | | | | 2,717.00 | | | | 6,612.00 |
| Repairs and Maintenance | 851.34 | 326.75 | 266.75 | 527.74 | 384.55 | 889.02 | 266.75 | 266.75 |
| Security | 233.00 | | 116.50 | 116.50 | 116.50 | 116.50 | 116.50 | 233.00 |
| Telephone Expense | | | | | | | | 7.95 |
| Unapplied Cash Bill Payment Expense | | | | | | | | |
| Utilities | 4,338.09 | 4,325.03 | 3,899.77 | 4,120.70 | 3,949.47 | 4,465.48 | 4,413.74 | 5,025.55 |
| Workcomp | 1,991.00 | | | | 1,946.00 | 1,946.00 | 1,946.00 | 1,946.00 |
| **Total Expenses** | $168,512.34 | $68,289.88 | $359,654.52 | $111,957.40 | $84,547.62 | $84,176.02 | $76,378.70 | $208,419.29 |
| **Net Operating Income** | $83,764.90 | -$23,799.79 | -$217,172.30 | $9,787.89 | $22,166.57 | $1,282.98 | $6,056.04 | $220,752.54 |
| Other Income | | | | | | | | |
| Interest Income | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 |
| Other Miscellaneous Income | | | | | | | | |
| **Total Other Income** | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 | $10.00 |
| Other Expenses | | | | | | | | |
| Ask My Accountant | | | | | 1,052.00 | | 33.44 | -550.00 |
| **Total Other Expenses** | $0.00 | $0.00 | $0.00 | $0.00 | $1,052.00 | $0.00 | $33.44 | -$550.00 |
| **Net Other Income** | $10.00 | $10.00 | $10.00 | $10.00 | -$1,042.00 | $10.00 | -$23.44 | $560.00 |
| **Net Income** | $83,774.90 | -$23,809.79 | -$217,162.30 | $9,797.89 | $21,124.57 | $1,292.98 | $6,032.60 | $221,312.54 |

Tuesday, Jan 01, 2019 05:35:42 PM GMT-8 - Cash Basis

0031

Cash Basis

**Stanley Swain's, Inc.**
**Profit and Loss**
**January - December 2018**

| | Sep 2018 | Oct 2018 | Nov 2018 | Dec 2018 | Total |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Returns & Allowances | -35.00 | | 148.08 | 106.01 | -8,548.17 |
| Sales | 17,406.84 | 27,444.25 | 26,581.40 | 40,317.69 | 1,420,671.43 |
| **Total Income** | $ 17,371.84 | $ 27,444.25 | $ 26,729.48 | $ 40,423.70 | $ 1,412,123.26 |
| **Cost of Goods Sold** | | | | | |
| Merchandise for Store | 96.88 | 230.31 | 8,752.67 | 2,668.81 | -38,531.83 |
| Merchant Account Fees | 2,075.62 | | 7.99 | 570.35 | 40,714.27 |
| **Total Cost of Goods Sold** | $ 2,172.50 | $ 230.31 | $ 8,760.66 | $ 3,239.16 | $ 2,182.44 |
| **Gross Profit** | $ 15,199.34 | $ 27,213.94 | $ 17,968.82 | $ 37,184.54 | $ 1,409,940.82 |
| **Expenses** | | | | | |
| Advertising/Promotion/Marketing | 225.00 | 0.00 | 576.77 | 300.00 | 32,411.54 |
| Bank Service Charges | 17.65 | 30.00 | 25.00 | 147.15 | 2,060.88 |
| Build-Out | | | | | 3,110.88 |
| Building Lease Common | | | | | 5,477.92 |
| Building Lease Taxes | | | | | 4,946.20 |
| Building Lease/Rent | | | | 16,875.00 | 189,097.40 |
| Computer and Internet Expenses | | | 291.00 | | 1,233.59 |
| Donation | | | | | 65.00 |
| Dues and Subscriptions | 93.94 | 168.44 | 93.94 | 324.00 | 5,403.19 |
| Fees | 84.00 | 37.00 | 790.36 | 67.00 | 10,073.02 |
| Insurance Expense | 1,696.79 | -4,028.87 | 1,178.31 | 865.09 | 13,281.42 |
| Interest Expense | 808.62 | 1,037.77 | 1,050.21 | 841.50 | 320,724.20 |
| Licenses and Fees | | | | | 627.00 |
| Loan Fees | 20.00 | | | | 180.00 |
| Medical | 4,822.71 | 3,023.05 | 1,807.51 | 2,430.28 | 46,132.42 |
| Moving | | | | | 1,853.10 |
| Office Supplies | | | | | 5,414.73 |
| Other Taxes Paid | | | | | 716.59 |
| Payroll Salaries | 16,637.86 | 9,237.01 | 5,850.96 | 2,828.20 | 326,240.82 |
| Payroll Taxes | 7,008.59 | | | | 128,701.12 |
| PayrollFees | 141.05 | | | | 2,951.45 |

Cash Basis

## Stanley Swain's, Inc.
## Profit and Loss
### January - December 2018

| | Sep 2018 | Oct 2018 | Nov 2018 | Dec 2018 | Total |
|---|---|---|---|---|---|
| Postage | | | | | 2,275.00 |
| Printing | | 148.91 | 60.07 | | 415.86 |
| Professional Fees | 4,950.65 | 3,500.00 | 4,825.00 | 4,400.00 | 95,352.03 |
| Rent Expense | | | 16,875.00 | | 23,487.00 |
| Rental Equipment | | | | 687.09 | 687.09 |
| Repairs and Maintenance | | | | | 3,779.65 |
| Security | | 428.00 | | 25.00 | 1,501.50 |
| Telephone Expense | 7.99 | 514.60 | 7.99 | 35.17 | 573.70 |
| Unapplied Cash Bill Payment Expense | | 105.31 | -85.31 | | 20.00 |
| Utilities | | 952.83 | 2,208.44 | 481.22 | 38,180.32 |
| Workcomp | 1,946.00 | | | | 14,438.00 |
| **Total Expenses** | $ 38,460.85 | $ 15,154.05 | $ 35,555.25 | $ 30,306.70 | $ 1,281,412.62 |
| **Net Operating Income** | -$ 23,261.51 | $ 12,059.89 | -$ 17,586.43 | $ 6,877.84 | $ 128,528.20 |
| Other Income | | | | | |
| Interest Income | | | | | 80.00 |
| Other Miscellaneous Income | | | | 25,000.00 | 25,000.00 |
| **Total Other Income** | $ 0.00 | $ 0.00 | $ 0.00 | $ 25,000.00 | $ 25,080.00 |
| Other Expenses | | | | | |
| Ask My Accountant | | -64.86 | | | 470.58 |
| **Total Other Expenses** | $ 0.00 | -$ 64.86 | $ 0.00 | $ 0.00 | $ 470.58 |
| **Net Other Income** | $ 0.00 | $ 64.86 | $ 0.00 | $ 25,000.00 | $ 24,609.42 |
| **Net Income** | -$ 23,261.51 | $ 12,124.75 | -$ 17,586.43 | $ 31,877.84 | $ 153,137.62 |

0033

# Exhibit "C"

**Accrual Basis**

**Stanley Swain's, Inc.**
**Profit and Loss**
**January - December 2018**

| | Jan 2018 | Feb 2018 | Mar 2018 | Apr 2018 | May 2018 | Jun 2018 | Jul 2018 | Aug 2018 |
|---|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | | |
| Returns & Allowances | -1,457.50 | -1,523.75 | -1,293.08 | -1,228.03 | -1,135.94 | -824.83 | -227.29 | -1,076.84 |
| Sales | 396,153.97 | 188,954.40 | 171,383.50 | 133,809.43 | 130,731.28 | 100,056.80 | 93,655.89 | 94,175.98 |
| **Total Income** | $ 394,696.47 | $ 187,430.65 | $ 170,090.42 | $ 132,561.40 | $ 129,595.34 | $ 99,231.97 | $ 93,428.60 | $ 93,099.14 |
| **Cost of Goods Sold** | | | | | | | | |
| Merchandise for Store | 195,485.71 | 95,405.39 | 32,230.94 | 19,172.43 | 23,743.66 | 18,582.54 | 9,101.40 | -336,667.84 |
| Merchant Account Fees | 7,291.20 | 8,696.33 | 5,061.11 | 4,812.62 | 4,123.76 | 3,613.47 | 2,609.01 | 1,852.81 |
| **Total Cost of Goods Sold** | $ 202,776.91 | $ 104,101.72 | $ 37,292.05 | $ 23,985.05 | $ 27,867.42 | $ 22,196.01 | $ 11,710.41 | -$ 334,815.03 |
| **Gross Profit** | $ 191,919.56 | $ 83,328.93 | $ 132,798.37 | $ 108,596.35 | $ 101,727.92 | $ 77,035.96 | $ 81,718.19 | $ 427,914.17 |
| **Expenses** | | | | | | | | |
| Advertising/Promotion/Marketing | 27,756.34 | 2,347.93 | 2,452.00 | 1,052.00 | 552.00 | 1,909.08 | 1,500.00 | 697.50 |
| Bank Service Charges | 249.73 | 249.45 | 206.36 | 199.01 | 182.70 | 182.59 | 176.95 | 394.29 |
| Build-Out | | | | | | | | 3,110.88 |
| Building Lease Common | 2,634.16 | | 763.34 | 763.34 | | 1,317.08 | | |
| Building Lease Taxes | 1,526.68 | | 1,317.08 | 1,339.10 | | 763.34 | | |
| Building Lease/Rent | 78,888.96 | | 39,444.48 | 39,444.48 | | 14,444.48 | | |
| Computer and Internet Expenses | 14.55 | | | 593.75 | | 334.29 | | |
| Donation | 65.00 | | | | | | | |
| Dues and Subscriptions | 747.38 | 318.94 | 543.26 | 318.94 | 318.94 | 738.94 | 1,409.50 | 326.97 |
| Fees | | 27.00 | 25.00 | | 64.00 | 7.99 | 8,152.47 | 818.20 |
| Insurance Expense | 2,015.74 | | 3,070.41 | 3,080.37 | 313.21 | 1,696.79 | 1,696.79 | 1,696.79 |
| Interest Expense | 727.58 | 765.08 | 251,502.65 | 806.77 | 591.33 | 927.49 | 973.01 | 60,692.19 |
| Licenses and Fees | 627.00 | | | | | 1,004.34 | | |
| Loan Fees | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 |
| Medical | 145.00 | 4,967.61 | 4,822.71 | 4,822.71 | 4,822.71 | 4,822.71 | 4,822.71 | 4,822.71 |
| Moving | | | | | | | | 1,853.10 |
| Office Supplies | 741.48 | 2,312.75 | 322.85 | 184.79 | 267.45 | 561.07 | 923.30 | 101.04 |
| Other Taxes Paid | | | | | | 689.54 | 27.05 | |
| Payroll Salaries | 36,878.15 | 36,085.93 | 34,374.29 | 33,695.44 | 49,252.28 | 33,294.64 | 33,759.57 | 34,346.49 |

Accrual Basis

## Stanley Swain's, Inc.
## Profit and Loss
### January - December 2018

| | Jan 2018 | Feb 2018 | Mar 2018 | Apr 2018 | May 2018 | Jun 2018 | Jul 2018 | Aug 2018 |
|---|---|---|---|---|---|---|---|---|
| Payroll Taxes | 11,245.65 | 15,666.61 | 14,624.02 | 14,451.86 | 21,075.83 | 14,223.32 | 14,253.76 | 16,151.48 |
| Payroll/Fees | 694.50 | 276.80 | 276.80 | 282.90 | 423.15 | 279.25 | 293.10 | 283.90 |
| Postage | 800.00 | | 875.00 | | | 300.00 | | 300.00 |
| Printing | 206.88 | | | | | | | |
| Professional Fees | 914.13 | 600.00 | 1,731.25 | 3,420.00 | 1,607.94 | 2,003.50 | 3,227.50 | 68,712.50 |
| Rent Expense | | | | | | | | 6,612.00 |
| Rental Equipment | | | | | | | | |
| Repairs and Maintenance | 851.34 | 326.75 | 266.75 | 527.74 | 384.55 | 889.02 | 266.75 | 533.50 |
| Security | 233.00 | | 116.50 | 116.50 | 116.50 | 116.50 | 116.50 | 233.00 |
| Telephone Expense | | | | | | | | 7.95 |
| Utilities | 4,338.09 | 4,325.03 | 3,899.77 | 4,120.70 | 3,949.47 | 4,465.48 | 4,413.74 | 10,273.27 |
| Workcomp | 1,991.00 | | | 2,717.00 | 1,946.00 | 1,946.00 | 1,946.00 | 1,946.00 |
| **Total Expenses** | $ 174,312.34 | $ 68,289.88 | $ 360,654.52 | $ 111,957.40 | $ 85,888.06 | $ 86,937.44 | $ 77,978.70 | $ 213,933.76 |
| **Net Operating Income** | $ 17,607.22 | $ 15,039.05 | -$ 227,856.15 | -$ 3,361.05 | -$ 15,839.86 | -$ 9,901.48 | $ 3,739.49 | $ 213,980.41 |
| Other Income | | | | | | | | |
| Interest Income | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 |
| Other Miscellaneous Income | | | | | | | | |
| **Total Other Income** | $ 10.00 | $ 10.00 | $ 10.00 | $ 10.00 | $ 10.00 | $ 10.00 | $ 10.00 | $ 10.00 |
| Other Expenses | | | | | | | | |
| Ask My Accountant | | | | | 1,052.00 | | 33.44 | -550.00 |
| **Total Other Expenses** | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 1,052.00 | $ 0.00 | $ 33.44 | -$ 550.00 |
| **Net Other Income** | $ 10.00 | $ 10.00 | $ 10.00 | $ 10.00 | -$ 1,042.00 | $ 10.00 | -$ 23.44 | $ 560.00 |
| **Net Income** | $ 17,617.22 | $ 15,049.05 | -$ 227,846.15 | -$ 3,351.05 | -$ 14,797.86 | -$ 9,891.48 | $ 3,716.05 | $ 214,540.41 |

Tuesday, Jan 01, 2019 05:35:12 PM GMT-8 - Accrual Basis

**Accrual Basis**

## Stanley Swain's, Inc.
### Profit and Loss
### January - December 2018

| | Sep 2018 | Oct 2018 | Nov 2018 | Dec 2018 | Total |
|---|---|---|---|---|---|
| **Income** | | | | | |
| Returns & Allowances | -35.00 | | 148.08 | 106.01 | -8,548.17 |
| Sales | 17,406.84 | 27,444.25 | 26,581.40 | 40,317.69 | 1,420,671.43 |
| **Total Income** | $ 17,371.84 | $ 27,444.25 | $ 26,729.48 | $ 40,423.70 | $ 1,412,123.26 |
| **Cost of Goods Sold** | | | | | |
| Merchandise for Store | 18,446.28 | 12,309.78 | 15,090.17 | 11,380.61 | 114,281.07 |
| Merchant Account Fees | 2,075.62 | | 7.99 | 570.35 | 40,714.27 |
| **Total Cost of Goods Sold** | $ 20,521.90 | $ 12,309.78 | $ 15,098.16 | $ 11,950.96 | $ 154,995.34 |
| **Gross Profit** | -$ 3,150.06 | $ 15,134.47 | $ 11,631.32 | $ 28,472.74 | $ 1,257,127.92 |
| **Expenses** | | | | | |
| Advertising/Promotion/Marketing | 225.00 | -1,030.31 | 450.00 | 300.00 | 38,211.54 |
| Bank Service Charges | 17.65 | 30.00 | 25.00 | 147.15 | 2,060.88 |
| Build-Out | | | | | 3,110.88 |
| Building Lease Common | | | | | 5,477.92 |
| Building Lease Taxes | | | | | 4,946.20 |
| Building Lease/Rent | | | | 16,875.00 | 189,097.40 |
| Computer and Internet Expenses | | | 291.00 | | 1,233.59 |
| Donation | | | | | 65.00 |
| Dues and Subscriptions | 93.94 | 168.44 | 93.94 | 324.00 | 5,403.19 |
| Fees | 84.00 | 37.00 | 790.36 | 67.00 | 10,073.02 |
| Insurance Expense | 1,696.79 | -4,028.87 | 1,178.31 | 865.09 | 13,281.42 |
| Interest Expense | 808.62 | 1,037.77 | 1,050.21 | 841.50 | 320,724.20 |
| Licenses and Fees | | | | | 1,631.34 |
| Loan Fees | 20.00 | | | | 180.00 |
| Medical | 8,145.76 | 3,323.05 | 1,807.51 | 599.74 | 47,924.93 |
| Moving | | | | | 1,853.10 |
| Office Supplies | | | | | 5,414.73 |
| Other Taxes Paid | | | | | 716.59 |
| Payroll Salaries | 16,637.86 | 9,237.01 | 5,850.96 | 2,828.20 | 326,240.82 |

**Accrual Basis**

## Stanley Swain's, Inc.
## Profit and Loss
## January - December 2018

| | Sep 2018 | Oct 2018 | Nov 2018 | Dec 2018 | Total |
|---|---|---|---|---|---|
| Payroll Taxes | 7,008.59 | | | | 128,701.12 |
| PayrollFees | 141.05 | | | | 2,951.45 |
| Postage | | | 109.30 | | 2,540.98 |
| Printing | 156.68 | 148.91 | 60.07 | | 415.86 |
| Professional Fees | 5,248.15 | 3,850.00 | 6,947.50 | 4,600.00 | 102,862.47 |
| Rent Expense | | | 16,875.00 | | 23,487.00 |
| Rental Equipment | | | | 687.09 | 687.09 |
| Repairs and Maintenance | 1,039.68 | 60.00 | | | 5,146.08 |
| Security | | 547.00 | 25.00 | | 1,620.50 |
| Telephone Expense | 347.10 | 175.49 | 43.16 | 167.50 | 741.20 |
| Utilities | 2,941.01 | 2,315.62 | 1,943.35 | 1,348.28 | 48,333.81 |
| Workcomp | 1,946.00 | | | | 14,438.00 |
| **Total Expenses** | $ 46,557.88 | $ 15,871.11 | $ 37,540.67 | $ 29,650.55 | $ 1,309,572.31 |
| **Net Operating Income** | -$ 49,707.94 | -$ 736.64 | -$ 25,909.35 | -$ 1,177.81 | $ 52,444.39 |
| Other Income | | | | | |
| Interest Income | | | | | 80.00 |
| Other Miscellaneous Income | | | | 25,000.00 | 25,000.00 |
| **Total Other Income** | $ 0.00 | $ 0.00 | $ 0.00 | $ 25,000.00 | $ 25,080.00 |
| Other Expenses | | | | | |
| Ask My Accountant | | -64.86 | | | 470.58 |
| **Total Other Expenses** | $ 0.00 | $ 64.86 | $ 0.00 | $ 0.00 | $ 470.58 |
| **Net Other Income** | $ 0.00 | -$ 64.86 | $ 0.00 | $ 25,000.00 | $ 24,609.42 |
| **Net Income** | -$ 49,707.94 | -$ 671.78 | -$ 25,909.35 | -$ 23,822.19 | $ 27,834.97 |

0038

# EXHIBIT "D"

# Stanley Swain's, Inc.
## Balance Sheet
### As of December 31, 2018

 ( Gccured )

|  | Dec 2018 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Bank Accounts** | |
| Bank of the West 024570 | 0.00 |
| Bank of the West 658575 | 228.50 |
| CBB New 12-15-18 | 2,673.36 |
| Citizens Business Bank | 11.12 |
| **Total Bank Accounts** | $ 2,912.98 |
| **Other Current Assets** | |
| Holding fo rent | 9,200.00 |
| Inventory | 530,892.35 |
| Petty Cash | 0.00 |
| Prepaid Expense | 65,174.59 |
| Prepaid Income Taxes | 294.60 |
| Security Deposit | 50,000.00 |
| **Total Other Current Assets** | $ 655,561.54 |
| **Total Current Assets** | $ 658,474.52 |
| **Fixed Assets** | |
| Accumulated Depreciation | -598,433.16 |
| Furniture and Equipment | 434,004.74 |
| Leasehold Improvements | 368,317.91 |
| **Total Fixed Assets** | $ 203,889.49 |
| **Other Assets** | |
| Deposits Asset | 21,290.00 |
| Loans To/From Shareholder | 706,124.19 |
| Paypal | 0.00 |
| Prepaid Loan Fees | 3,611.10 |
| Undeposited Funds | 5,229.66 |
| Undeposited Funds CCard | 3,834.95 |
| **Total Other Assets** | $ 740,089.90 |
| **TOTAL ASSETS** | $ 1,602,453.91 |
| **LIABILITIES AND EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable (A/P) | 225,817.82 |
| **Total Accounts Payable** | $ 225,817.82 |
| **Credit Cards** | |
| Chase Slate - Lori | 22,569.36 |
| Chase Slate - Richard Noble | 22,696.02 |
| Citi-Costco-Karl | 16,396.82 |

0040

| | | |
|---|---|---:|
| US Bank-Karl | | 4,874.08 |
| **Total Credit Cards** | $ | **66,536.28** |
| **Other Current Liabilities** | | |
| Current Portion Long Term Debt | | 293,041.70 |
| Due to officers | | 15,800.00 |
| Gift Cards | | 58,624.40 |
| LiabilitiesSubjectToCompromise | | 247,423.39 |
| Loan Payable - Richard Noble | | 1,500.00 |
| Loans Payable | | 0.00 |
| C2F | | 5,754.07 |
| Celtic Bank | | 155,414.27 |
| FFB | | 0.00 |
| Kalmata Loan | | 81,090.20 |
| Lambuth | | 0.00 |
| LOANME | | 70,538.48 |
| McPhersons | | 310,258.66 |
| On Deck | | 55,889.55 |
| On Deck Line of Credit | | 41,487.60 |
| Tilem | | 89,530.32 |
| **Total Loans Payable** | $ | **809,963.15** |
| Payroll Liabilities | | 7,008.59 |
| PTO ACCRUED - paid | | 14,258.74 |
| Sales Tax | | 9,258.42 |
| **Total Other Current Liabilities** | $ | **1,456,878.39** |
| **Total Current Liabilities** | $ | **1,749,232.49** |
| **Total Liabilities** | $ | **1,749,232.49** |
| **Equity** | | |
| Capital Stock | | 25,600.00 |
| Opening Balance Equity | | -772,933.52 |
| Retained Earnings | | 9,448.45 |
| Retained Earnings C Corp | | 618,941.46 |
| Net Income | | -27,834.97 |
| **Total Equity** | -$ | **146,778.58** |
| **TOTAL LIABILITIES AND EQUITY** | $ | **1,602,453.91** |

Tuesday, Jan 01, 2019 05:34:03 PM GMT-8 - Accrual Basis

## Stanley Swain's, Inc.
## Balance Sheet
### As of December 31, 2018



(cash)

|  | Dec 2018 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Bank Accounts** | |
| Bank of the West 024570 | 0.00 |
| Bank of the West 658575 | 228.50 |
| CBB New 12-15-18 | 2,673.36 |
| Citizens Business Bank | 11.12 |
| **Total Bank Accounts** | $ 2,912.98 |
| **Other Current Assets** | |
| Holding fo rent | 9,200.00 |
| Inventory | 530,892.35 |
| Petty Cash | 0.00 |
| Prepaid Expense | 65,174.59 |
| Prepaid Income Taxes | 294.60 |
| Security Deposit | 50,000.00 |
| **Total Other Current Assets** | $ 655,561.54 |
| **Total Current Assets** | $ 658,474.52 |
| **Fixed Assets** | |
| Accumulated Depreciation | -598,433.16 |
| Furniture and Equipment | 434,004.74 |
| Leasehold Improvements | 368,317.91 |
| **Total Fixed Assets** | $ 203,889.49 |
| **Other Assets** | |
| Deposits Asset | 21,290.00 |
| Loans To/From Shareholder | 706,124.19 |
| Paypal | 0.00 |
| Prepaid Loan Fees | 3,611.10 |
| Undeposited Funds | 5,229.66 |
| Undeposited Funds CCard | 3,834.95 |
| **Total Other Assets** | $ 740,089.90 |
| **TOTAL ASSETS** | $ 1,602,453.91 |
| **LIABILITIES AND EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| Accounts Payable (A/P) | 0.00 |
| **Total Accounts Payable** | $ 0.00 |
| **Credit Cards** | |
| Chase Slate - Lori | 22,569.36 |
| Chase Slate - Richard Noble | 22,696.02 |
| Citi-Costco-Karl | 16,396.82 |

| | | |
|---|---|---:|
| **US Bank-Karl** | | 4,874.08 |
| **Total Credit Cards** | $ | **66,536.28** |
| **Other Current Liabilities** | | |
| Current Portion Long Term Debt | | 293,041.70 |
| Due to officers | | 15,800.00 |
| Gift Cards | | 58,624.40 |
| LiabilitiesSubjectToCompromise | | 247,423.39 |
| Loan Payable - Richard Noble | | 1,500.00 |
| Loans Payable | | 0.00 |
| C2F | | 5,754.07 |
| Celtic Bank | | 155,414.27 |
| FFB | | 0.00 |
| Kalmata Loan | | 81,090.20 |
| Lambuth | | 0.00 |
| LOANME | | 70,538.48 |
| McPhersons | | 310,258.66 |
| On Deck | | 55,889.55 |
| On Deck Line of Credit | | 41,487.60 |
| Tilem | | 89,530.32 |
| **Total Loans Payable** | $ | **809,963.15** |
| Payroll Liabilities | | 7,008.59 |
| PTO ACCRUED - paid | | 14,258.74 |
| Sales Tax | | 9,258.42 |
| **Total Other Current Liabilities** | $ | **1,456,878.39** |
| **Total Current Liabilities** | $ | **1,523,414.67** |
| **Total Liabilities** | $ | **1,523,414.67** |
| **Equity** | | |
| Capital Stock | | 25,600.00 |
| Opening Balance Equity | | -772,933.52 |
| Retained Earnings | | 9,448.45 |
| Retained Earnings C Corp | | 663,786.69 |
| Net Income | | 153,137.62 |
| **Total Equity** | $ | **79,039.24** |
| **TOTAL LIABILITIES AND EQUITY** | $ | **1,602,453.91** |

Tuesday, Jan 01, 2019 05:34:33 PM GMT-8 - Cash Basis

# Exhibit "E"

Form **1120S**

## U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S corporation.
▶ Go to www.irs.gov/Form1120S for instructions and the latest information.

OMB No. 1545-0123

**2017**

Department of the Treasury
Internal Revenue Service

For calendar year 2017 or tax year beginning _____, and ending _____

| | | | |
|---|---|---|---|
| **A** S election effective date 07/01/1998 | **Name** STANLEY SWAIN'S, INC. | | **D** Employer identification number ____654 |
| **B** Business activity code number (see instructions) 453210 | Number, street, and room or suite no. If a P.O. box, see instructions. 537 NORTH GLENDALE AVENUE | | **E** Date incorporated 03/28/1963 |
| **C** Check if Sch. M-3 attached ☐ | City or town, state or province, country, and ZIP or foreign postal code GLENDALE, CA 91206 | | **F** Total assets (see instructions) $ 1,921,815. |

**G** Is the corporation electing to be an S corporation beginning with this tax year?  ☐ Yes  ☒ No  If "Yes," attach Form 2553 if not already filed

**H** Check if: **(1)** ☐ Final return **(2)** ☐ Name change **(3)** ☐ Address change **(4)** ☐ Amended return **(5)** ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ▶ 2

Caution: Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

**Income**

| | | | | |
|---|---|---|---|---|
| 1 a | Gross receipts or sales | 3,196,028. | | |
| b | Returns and allowances | | | |
| c | Bal. Subtract line 1b from line 1a | | 1c | 3,196,028. |
| 2 | Cost of goods sold (attach Form 1125-A) | | 2 | 1,985,103. |
| 3 | Gross profit. Subtract line 2 from line 1c | | 3 | 1,210,925. |
| 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | | 4 | |
| 5 | Other income (loss) (attach statement) STATEMENT 1    STATEMENT 2 | | 5 | 1,496. |
| 6 | Total income (loss). Add lines 3 through 5 | ▶ | 6 | 1,212,421. |

**Deductions** (See instructions for limitations)

| | | | | |
|---|---|---|---|---|
| 7 | Compensation of officers (see instrs. - attach Form 1125-E) | | 7 | 217,169. |
| 8 | Salaries and wages (less employment credits) | | 8 | 407,163. |
| 9 | Repairs and maintenance | | 9 | 14,932. |
| 10 | Bad debts | | 10 | |
| 11 | Rents | | 11 | 468,738. |
| 12 | Taxes and licenses STATEMENT 3 | | 12 | 64,975. |
| 13 | Interest | | 13 | 112,603. |
| 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | | 14 | 11,298. |
| 15 | Depletion (Do not deduct oil and gas depletion.) | | 15 | |
| 16 | Advertising | | 16 | 141,841. |
| 17 | Pension, profit-sharing, etc., plans | | 17 | |
| 18 | Employee benefit programs | | 18 | -14,419. |
| 19 | Other deductions (attach statement) STATEMENT 4 | | 19 | 251,884. |
| 20 | Total deductions. Add lines 7 through 19 | ▶ | 20 | 1,676,184. |
| 21 | Ordinary business income (loss). Subtract line 20 from line 6 | | 21 | -463,763. |

**Tax and Payments**

| | | | | |
|---|---|---|---|---|
| 22 a | Excess net passive income or LIFO recapture tax (see instructions) | 22a | | |
| b | Tax from Schedule D (Form 1120S) | 22b | | |
| c | Add lines 22a and 22b | | 22c | |
| 23 a | 2017 estimated tax payments and 2016 overpayment credited to 2017 | 23a | | |
| b | Tax deposited with Form 7004 | 23b | | |
| c | Credit for federal tax paid on fuels (attach Form 4136) | 23c | | |
| d | Add lines 23a through 23c | | 23d | |
| 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | | 24 | |
| 25 | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | | 25 | |
| 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | 26 | |
| 27 | Enter amount from line 26 Credited to 2018 estimated tax ____ Refunded ▶ | | 27 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ _____ Signature of officer    Date    ▶ PRESIDENT Title

May the IRS discuss this return with the preparer shown below (see instr.)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | | | |
|---|---|---|---|---|
| Print/Type preparer's name GREGG R. WIND, CPA | Preparer's signature | Date 05/10/18 | Check if self-employed ☐ | PTIN _____ |
| Firm's name ▶ KALLMAN+THOMPSON+LOGAN, LLP | | | Firm's EIN ▶ | |
| Firm's address ▶ 125 S. BARRINGTON PLACE LOS ANGELES, CA 90049 | | | Phone no. 310-342-6400 | |

JWA  For Paperwork Reduction Act Notice, see separate instructions.    Form **1120S** (2017)
711701
12-20-17

# EXHIBIT "F"

## NOTICE OF JUDGMENT LIEN
FOLLOW INSTRUCTIONS CAREFULLY (front and back of form)

**16-7550172903**

**10/07/2016 17:00**

**FILED**
CALIFORNIA
SECRETARY OF STATE

**SOS**

57603040002   UCC 1 FILING

A. NAME & PHONE OF FILER'S CONTACT (optional)

B. SEND ACKNOWLEDGMENT TO: (NAME AND ADDRESS)

Law Offices of David A. Tilem
206 North Jackson Street, Suite 201
Glendale, CA 91206

THIS SPACE FOR FILING OFFICE USE ONLY

---

**1. JUDGMENT DEBTOR'S EXACT LEGAL NAME** —Insert only one name, either 1a or 1b. Do not abbreviate or combine names.

1a. ORGANIZATION'S NAME
Stanley Swain's, Incorporated

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 537 North Glendale Avenue | Glendale | CA | 91206-3307 | US |

**2. JUDGMENT CREDITOR'S NAME** – Do not abbreviate or combine names.

2a. ORGANIZATION'S NAME
Law Offices of David A. Tilem

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 206 North Jackson Street, Suite 201 | Glendale | CA | 91206 | US |

ALL PROPERTY SUBJECT TO ENFORCEMENT OF A MONEY JUDGMENT AGAINST THE JUDGMENT DEBTOR TO WHICH A JUDGMENT LIEN ON PERSONAL PROPERTY MAY ATTACH UNDER SECTION 697.530 OF THE CODE OF CIVIL PROCEDURE IS SUBJECT TO THIS JUDGMENT LIEN.

A. Title of court where judgment was entered: United States Bankruptcy Court

Central District of California

B. Title of the action: In Re: Stanley Swains, Inc.

C. Number of this action: 2:13-bk-26241-WB

D. Date judgment was entered: 01/06/2015

E. Date of subsequent renewals of judgment (if any): _____

F. Amount required to satisfy judgment at date of this notice: $ 186,525.69

G. Date of this notice: 10/4/2016

**4.** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct:

SIGNATURE – SEE INSTRUCTION NO. 4

Dated: 10/4/2016
(If not indicated, use same as date in item 3G.)

FOR: David A. Tilem

ORIGINAL

NOTICE OF JUDGMENT LIEN (FORM JL1) (Rev. 6/01)
Approved by the Secretary of State

0047

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER (optional)**<br>Corporation Service Company<br>800-858-5294 | |
| **B. E-MAIL CONTACT AT FILER (optional)** | |
| **C. SEND ACKNOWLEDGMENT TO: (Name and Address)**<br>CORPORATION SERVICE COMPANY<br>251 LITTLE FALLS DRIVE<br>WILMINGTON, DE 19808<br>USA | **DOCUMENT NUMBER: 63036080002**<br>**FILING NUMBER: 17-7598624493**<br>**FILING DATE: 07/29/2017 05:21**<br><br>IMAGE GENERATED ELECTRONICALLY FOR XML FILING<br>THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY |

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| STANLEY SWAIN'S, INCORPORATED | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS<br>537 N. Glendale Ave | CITY<br>Glendale | STATE<br>CA | POSTAL CODE<br>91206 | COUNTRY<br>USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CSC, AS REPRESENTATIVE | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS<br>P.O. BOX 2576 | CITY<br>Springfield | STATE<br>IL | POSTAL CODE<br>62708 | COUNTRY<br>USA |

**4. COLLATERAL:** This financing statement covers the following collateral:

Security interest in and to all of Merchant's present and future accounts, chattel paper, deposit accounts, personal property, assets and fixtures, general intangibles, instruments, equipment, inventory wherever located, and proceeds now or hereafter owned or acquired by Merchant

**5.** Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

| 6a. Check <u>only</u> if applicable and check <u>only</u> one box:<br>☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | 6b. Check <u>only</u> if applicable and check <u>only</u> one box:<br>☐ Agricultural Lien ☐ Non-UCC Filing |
|---|---|

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
[134347935]

**FILING OFFICE COPY**

# EXHIBIT "G"

1/3/2019 1:51 PM

12/13/18

| | Beginning Date | Monday 11/26/2018 |
| --- | --- | --- |
| | Ending Date | Sunday 12/9/2018 |
| | Check Date | Thursday 12/13/2018 |

| Hire Date Rate | | Name | Regular Hours | 1.5X Hours | HOLIDAY | PTO Hours | PTO Dollars | SICK DAY Hours | TOTAL/GROSS EARNINGS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 3/13/1995 $5,219.20 | 7699 $65.24 | Wiest, Karl J | | | | | | | |
| 3/1/2010 $1,384.80 | 8549 $17.31 | Wiest, Lori B. | | | | | | | |
| 5/15/2017 $12.50 | 2053 | Kirkley, Rebecca L. | 43.48 | | | | | | 543.50 |
| 10/5/2016 $11.00 | 2259 | Moran, Monica | 5.52 | | | | | | 60.72 |
| 6/1/1985 $21.65 | 4098 | Noble, Richard | 60.00 | | | | | | 1,299.00 |
| 10/13/2015 $11.50 | 0101 | Quant, Rebecca A. | 15.42 | | | | | | 177.33 |
| 2/27/2017 $11.00 | 1859 | Rodriguez, Cesar | 9.95 | | | | | | 109.45 |
| 4/15/1998 $15.00 | 4038 | Spain, Ken | 69.60 | 1.20 | | | | | 1,071.00 |
| TOTALS | | | 203.97 | 1.20 | 0.00 | 0.00 | 0.00 | 0.00 | $3,261.00 |

0050

12/13/18

| NET PAID OUT |
|---|
| 496.48 |
| 55.47 |
| 1089.67 |
| 161.99 |
| 99.98 |
| 924.61 |
| 2828.19 |

12/13/18

| Hire Date Rate | | Name | Regular Hours | 1.5X Hours | HOLIDAY | PTO Hours | PTO Dollars | SICK DAY Hours | TOTAL GROSS EARNINGS |
|---|---|---|---|---|---|---|---|---|---|
| 3/13/1995 | 7699 | Wiest, Karl J | | | | | | | |
| $5,219.20 | $65.24 | | | | | | | | |
| 3/1/2010 | 8549 | Wiest, Lori B. | | | | | | | |
| $1,384.80 | $17.31 | | | | | | | | |
| 5/15/2017 | 2053 | Kirkley, Rebecca L. | 51.22 | | | | | | 640.25 |
| $12.50 | | | | | | | | | |
| 6/1/1985 | 4098 | Noble, Richard | 60.00 | | | | | | 1,299.00 |
| $21.65 | | | | | | | | | |
| 10/13/2015 | 0101 | Quant, Rebecca A. | 15.53 | | | | | | 190.24 |
| $12.25 | | | | | | | | | |
| 2/27/2017 | 1859 | Rodriguez, Cesar | 9.92 | | | | | | 114.08 |
| $11.50 | | | | | | | | | |
| 4/15/1998 | 4038 | Spain, Ken | 63.22 | 0.70 | | | | | 1,087.65 |
| $15.00 | | | | | | | | | |
| TOTALS | | | 199.89 | 0.70 | 0.00 | 0.00 | 0.00 | 0.00 | $3,331.22 |

Beginning Date    Monday 12/10/2018
Ending Date    Sunday 12/23/2018
Check Date    Thursday 12/27/2018

| NET PAID OUT |
| --- |
| 584.86 |
| 1089.67 |
| 173.78 |
| 104.21 |
| 938.98 |
| 2891.50 |

12/27/18

1/3/2019  2:04 PM

1|2|15

|  |  | Beginning Date | Monday 12/24/2018 |
|  |  | Ending Date | Sunday 12/31/2018 |
|  |  | Check Date | Thursday 1/2/2019 |

| Hire Date Rate | Name | | Regular Hours | 1.5X Hours | HOLIDAY | PTO Hours | PTO Dollars | SICK DAY Hours | TOTAL GROSS EARNINGS |
|---|---|---|---|---|---|---|---|---|---|
| 3/13/1995 $5,219.20 $65.24 | Wiest, Karl J | 7699 |  |  |  |  |  |  |  |
| 3/1/2010 $1,384.80 $17.31 | Wiest, Lori B. | 8549 |  |  |  |  |  |  |  |
| 5/15/2017 $12.50 | Kirkley, Rebecca L. | 2053 | 28.32 |  |  |  |  |  | 354.00 |
| 6/1/1985 $21.65 | Noble, Richard | 4098 | 30.00 |  |  |  |  |  | 649.50 |
| 10/13/2015 $12.25 | Quant, Rebecca A. | 0101 | 7.67 |  |  |  |  |  | 93.96 |
| 2/27/2017 $11.50 | Rodriguez, Cesar | 1859 | 5.08 |  |  |  |  |  | 58.42 |
| 4/15/1998 $15.00 | Spain, Ken | 4038 | 41.68 | 0.73 | 8.00 |  |  |  | 761.63 |
| TOTALS |  |  | 112.75 | 0.73 | 8.00 | 0.00 | 0.00 | 0.00 | $1,917.51 |

0054

| NET PAID OUT |
| --- |
| 323.38 |
| 593.31 |
| 85.83 |
| 53.37 |
| 657.52 |
| 1713.41 |

1/2/19

1/3/2019 2:07 PM

25/1)MATES
1)7)/9

| | | Beginning Date | Tuesday 1/1/2019 |
|---|---|---|---|
| | | Ending Date | Tuesday 1/15/2019 |
| | | Check Date | Thursday 1/17/2019 |

| Hire Date / Rate | Name | (No.) | Regular Hours | 1.5X Hours | HOLIDAY | PTO Hours | PTO Dollars | SICK DAY Hours | TOTAL GROSS EARNINGS |
|---|---|---|---|---|---|---|---|---|---|
| 3/13/1995 $5,219.20 | Wiest, Karl J | 7699 $65.24 | | | | | | | 5,576.70 |
| 3/1/2010 $1,384.80 | Wiest, Lori B. | 8549 $17.31 | | | | | | | 1,479.75 |
| 5/15/2017 $12.50 | Kirkley, Rebecca L. | 2053 | 58.50 | | | | | | 731.25 |
| 6/1/1985 $21.65 | Noble, Richard | 4098 | 37.50 | | | | | | 811.88 |
| 10/13/2015 $12.25 | Quant, Rebecca A. | 0101 | 26.00 | | | | | | 318.50 |
| 2/27/2017 $11.50 | Rodriguez, Cesar | 1859 | 13.00 | | | | | | 149.50 |
| 4/15/1998 $15.00 | Spain, Ken | 4038 | 88.00 | | | | | | 1,320.00 |
| TOTALS | | | 223.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | $3,331.13 |

0056

| NET PAID OUT |
| --- |
| |
| |
| 667.99 |
| 741.64 |
| 290.95 |
| 136.57 |
| 1139.57 |
| 2976.71 |

# EXHIBIT "H"

# Promissory Note
## Dated January 3, 2019

Parties:

- Karl Wiest lender ("Wiest")
- Stanley Swain's, Inc. borrower ("Swain's)

For valuable consideration, Swain's borrows the sum of $100,000 from Wiest subject to approval of the Bankruptcy Court.

In exchange, Wiest to enjoy the following terms:

1. Repayment of the $100,000 all due and payable on or before the Effective Date of the plan in the pending chapter 11 case of Swain's.

2. Interest at 5% per year.

3. No pre-payment penalties.

4. Swain's may pre-pay at any time.

5. No payment schedule shall be set other than as stated above.

6. Wiest to be given an administrative claim for the monies loaned.

To the extent the note does not provide for a condition, state law shall supply that condition.

Executed this January 3, 2019, at Encino, California.

_____         _____
Karl Wiest, Lender              Karl Wiest for Stanley Swain's Inc.

0059

# EXHIBIT "I"

**GLENDALE AREA SCHOOLS CREDIT UNION**
1800 Broadview Drive
Glendale, CA 91208
818.248.7425
www.gascu.org

Glendale Area Schools Cu

| | |
|---|---|
| Date | 12/31/18 |
| Account # | 0000000001 |
| Soc Sec | XXX-99-2351 |
| Type | Personal Loan |

# NOTICE OF ACTION TAKEN

DESCRIPTION OF ADVERSE ACTION TAKEN BY CREDIT UNION:

[X] Unable to approve loan request due to principal reasons indicated below.

## PRINCIPAL REASON(S) FOR ADVERSE ACTION CONCERNING CREDIT

[ ] Credit application incomplete
[ ] Poor credit performance with credit union
[ ] Temporary or irregular employment
[ ] Length of employment
[ ] Counter offer not accepted
[X] Excessive obligations in relation to income
[ ] Length of residence
[ ] Unable to verify residence
[ ] Limited credit experience
[X] Delinquent past or present credit obligations with others
[ ] Credit request cancelled by applicant

[ ] At maximum unsecured credit with credit union
[ ] Unable to verify credit references
[ ] Unable to verify employment
[X] Income insufficient
[ ] Value or type of collateral not sufficient
[ ] Unable to verify income
[ ] Temporary residence
[ ] No credit file
[ ] Not elegible for membership in this credit union
[ ] Garnishment,attachment,foreclosure,collection action,judgment

## DISCLOSURE OF USE OF INFORMATION OBTAINED FROM OUTSIDE SOURCE

[X] Our credit decision was based in whole or in part on information obtained in a report from the consumer reporting listed below.  You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. The reporting agency played no part in our decision and is unable to supply specific reasons why we have denied credit to you.

[X] Experian
PO Box 2104
Allen TX 75013
(888) 397-3742
www.experian.com

[ ] Trans Union
PO Box 2000
Chester PA 19022
(800) 888-4213
www.transunion.com

[ ] Equifax
PO Box 740241
Atlanta GA 30374
(800) 685-1111
www.equifax.com

[ ] Our credit decision was based in whole or in part on information obtained from an outside source other than a consumer reporting agency. Under the Fair Credit Reporting Act, you have the right to make a written request, no later than 60 days after you receive this notice,for disclosure of the nature of this information.

## EQUAL CREDIT NOTICE

The  Federal Equal Credit Opportunity Act  prohibits creditors  from discriminating against credit applicants on the basis of race, color,religion, natural origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.  The federal agency that administers compliance with this law concerning this creditor is:

National Credit Union Administration
1230 W. Washington Street, Stuite 301
Tempe, AZ 85281

**CITIZENS**
**BUSINESS BANK**

A Financial Services Company

1000 North Brand Boulevard
Glendale, CA 91202
818-550-0400
camoore@cbbank.com

December 11, 2018

Mr. Karl Wiest
Swains HQ
445 W. Colorado Blvd.
Glendale, CA 91204

Dear Karl;

Thank you for meeting with us regarding financing for Swains.

Unfortunately, based on our discussions Citizens Business Bank will not be able to provide financing to you at this time.

Thank you, and please let me know if there is anything else we can do for you.

Sincerely,

Charles A. Moore
Vice President, Relationship Manager
Glendale Business Financial Center

# EXHIBIT "J"

**City of Glendale Integrated Wast Management**

| Account # | Invoice Date | Amount |
|---|---|---|
| X-XXXX411-4 | 12/12/2018 | $346.81 |
| X-XXXX411-4 | 11/1/2018 | $346.81 |
| X-XXXX411-4 | 10/1/2018 | $654.66 |
| **Total (from 9/2018 to 12/2018):** | | **$1,348.28** |

| **Monthly Avg:** | | **$449.43** |
|---|---|---|

**City of Glendale Water & Power (electricity and water)**

| Account # | Invoice Date | Amount |
|---|---|---|
| XXXXXX01-08 | 12/12/2018 | $781.42 |
| XXXXXX01-08 | 11/13/2018 | $856.49 |
| XXXXXX01-08 | 10/17/2018 | $1,172.22 |
| XXXXXX01-08 | 9/18/2018 | $709.76 |
| **Total (from 9/2018 to 12/2018):** | | **$3,519.89** |

| **Monthly Avg:** | | **$879.97** |
|---|---|---|

**Spectrum Business (internet)**

| Account # | Invoice Date | Amount |
|---|---|---|
| XXXX XX XXX XXX2944 | 12/22/2018 | $0.00 |
| XXXX XX XXX XXX9510 | 12/18/2018 | $313.32 |
| XXXX XX XXX XXX2944 | 11/22/2018 | $46.30 |
| XXXX XX XXX XXX9510 | 11/18/2018 | $383.66 |
| XXXX XX XXX XXX2944 | 10/22/2018 | $0.00 |
| XXXX XX XXX XXX9510 | 10/18/2018 | $481.22 |
| XXXX XX XXX XXX2944 | 9/22/2018 | -$38.70 |
| XXXX XX XXX XXX2944 | 9/21/2018 | $30.00 |
| XXXX XX XXX XXX9510 | 9/18/2018 | $190.88 |
| **Total (from 9/2018 to 12/2018):** | | **$1,406.68** |

| **Monthly Avg:** | | **$351.67** |
|---|---|---|

**The Gas Company (So Cal Gas)**

| Account Number | Invoice Date | Amount |
|---|---|---|
| XXX XXX X319 9 | 12/14/2018 | $17.85 |
| XXX XXX X319 9 | 11/13/2018 | $15.83 |
| XXX XXX X319 9 | 10/16/2018 | $47.33 |
| XXX XXX X093 0* | 9/20/2018 | $15.30 |
| **Total (from 9/2018 to 11/2018):** | | **$96.31** |

| **Monthly Avg:** | | **$24.08** |
|---|---|---|

**\* Old location**

**Birch Communications (telephones)**

| Account # | Invoice Date | Amount |
|---|---|---|
| XX1422 | 12/1/2018 | -$159.90 |
| XX1422 | 11/1/2018 | $300.74 |
| XX1422 | 10/1/2018 | $302.49 |
| XX1422 | 9/1/2018 | $154.91 |
| **Total (from 9/2018 to 12/2018):** | | **$598.24** |
| **Monthly Avg:** | | **$149.56** |

**Fone Zone (telephones)**

| Invoice # | Invoice Date | Amount |
|---|---|---|
| 3368 | 12/9/2018 | $167.50 |
| 3353 | 11/3/2018 | $167.50 |
| 3346 | 10/4/2018 | $167.50 |
| 3334 | 9/12/2018 | $339.11 |
| **Total (from 9/2018 to 12/2018):** | | **$841.61** |
| **Monthly Avg:** | | **$210.40** |